Ruffin, C. J.
 

 The degree of care to be taken of a hired slave does not differ from that required as to other things ; and it was correctly so held on the trial. Indeed, the declaration lays the defendant’s undertaking to be for ordinary care of the slave, and that the loss arose from the want of due care. It was, however, erroneous to leave the question of due care to the jury; since it is the province and duty of the Court to advise them on that point, supposing them to be satisfied of certain facts.—
 
 Biles v. Holmes,
 
 11 Ired. 16. Therefore the judgment would be reversed, if the verdict did not appear to be what it ought to have been, if the Court had given the proper direction. Por, supposing all the evidence to be true— and as to that, there was no dispute — it did not establish, we think, a want of due care in the defendant. The jury therefore judged rightly, and their decision ought not to be disturbed.
 

 
 *643
 
 Ordinary care is that degree of it, which in the same circumstances a person of ordinary prudence would take of the particular thing, were it his own. It is manifest, that it may differ very much according to the nature of the thing, the purpose for which it was hired, and the particular circumstances of risk, under which a loss occurred ; a coach, for example, is not kept like a casket ol jewels. So, a slave, being a moral and intelligent being, is usually as capable of self preservation as other persons. Henee, the same constant oversight and control are not requisite for his preservation, as for that of a lifeless thing, or of an irrational animal. Again, if an owner let his slave for a particular purpose, it is to be understood that he is fit for it; and therefore he may beiíet to that service and kept at it in the way that is usual. If he hire him, for instance, as a mariner upon a sea voyage, it is implied that he is to do the duty of a sailor. The ship's master, therefore, does the owner no wrong and evinces no want of due care by sending him for a useful purpose to the mast-head, though it happen that from want of experience or a steady head, he fall,'and be hurt. If, indeed, he were sent aloft in a tempest and forbidden to use the common means of security by lashing himself to the mast or rigging, that would make a difference. But surely the omission to give the slave particular instructions to use those ordinary means of preservation could not render the bailee liable, as for culpable neglect; since every one would confide in his understanding and disposition to take care of himself, as a sufficient guaranty for his using the ordinary precautions against the danger, naturally incident to the service. Moreover, the owner must have foreseen those risks and provided for them in the hire. These considerations tend to the conclusion, that the defendant here would not be liable, if the loss had arisen from a cause naturally connected with the employment, for which the slave was hired. For, it seems certain, that the plain-.
 
 *644
 
 tiff knew, that the whim, at which his slave was to work, must be within a few feet of the mouth of the shaft, and> from the depth of the shaft, that the operations of drawing off the water and raising the ore must go on night and day, and, of course, that the mouth of the shaft would not at any time be closed. The hazards of working near the open shaft, and in the night as well as the day, were the known hazards of the service. "Why did not the plaintiff warn the boy of his perils from those causes? Because he did not conceive, there was the least necessity ; and he ought not to complain, that the defendant omitted directions, which he thought unnecessary from himself. Unless the defendant, then, exposed the boy at an unreasonable time, or kept him at work for an unreasonable period, and the loss arose therefrom, he cannot
 
 be
 
 deemed negligent. It is stated, that the boy had no over coat.— But the state of the weather is not given ; nor is it stated, that he was not otherwise sufficiently clad. Indeed, his condition in that respect is not pretended to have been the cause of his death, or connected with it, saving only that he may have been thereby induced to go oftener to the fire, and it happened upon the final occasion, when he went there, that he fell into the shaft. But admit that the boy "would not have met with the fate he did, but for going to the fire, or if the fire had been in a different situation, yet it cannot be deemed gross negligence not to forbid the boy to go to the fire where it was, or not to have one in a different situation. The fire was between the boy and the lander, whose station is at the month of the shaft; and it is not stated that such was not its usual position, or that it was not a proper one. Apparently it Was the most proper. It was there equally convenient to the lander and the driver of the horse; and in fact, it was, by its light, a better protection to the slave against accidentally stumbling into the shaft, as he passed near its mouth at every round on which he followed the horse,
 
 *645
 
 than if it had been in a different direction. There was no such extraordinary hazard to the boys, who worked the whim, in going to the fire where it was, as to have induced the defendant to forbid them or to use any uncommon precautions, or give any particular-instructions ; Tor example, to keep that fire so as to give a light, or to make the fire in another place. It could not have been anticipated, that the boy was running any risk of falling into the shaft, which his own intelligence, at his age, would not prompt and enable him to avoid, considering him, as we must, as possessing the ordinary degree of intelligence and instinct of self preservation of persons of his age and class. Then as to the time of making the boy perform this service — that is, at night. As has been observed, it is to be inferred that the work could not be stopped during any part of the twenty four hours, without much loss; and that, in fact, it was the course of the business to keep at work. It is in that point of view, that the evidence, as to the employment of other hands in the same service and for the night as well as the day, was relevant and proper: not as excusing gross neglect as to one by a similar neglect as to others, but as establishing the usual and necessary duties of the employment, and as tending to establish the safety, with which it was attended, when pursued fey others of no more years or discretion than this lad, without any particular supervision. Some one had necessarily to perform this service at those times. Therefore it was not unreasonable,
 
 prima facie.
 
 It is not to be collected from the case, that the slave had been worn down by labour so protracted, as would ordinarily overcome persons of his age and condition by fatigue and heavy drowsiness, so as to deprive them of consciousness and the power of self control. On the contrary, we understand that this boy took his rest through the day, as it is stated, that jn the evening he commenced his duty forthe night- — there being three of them, who performed the task among them,
 
 *646
 
 and, probably, by turns. We cannot say that was unreasonable ; at least, not so, in its bearing on the point now under consideration, namely, as ordinarily disqualifying a boy like this for taking care of his life by avoiding the shaft, as with his senses about him he would do, and thereby making it incumbent on a bailee, as an act of ordinary care, to stop him from work, or appoint a superintendent to keep him away from the shaft. If the defendant had, for example, sent the boy down the shaft, considering his inexperience aud timidity, it would, doubtless, have been gross negligence not to provide against the accident of his falling, by making him fast to the bucket or chain. But with common bodily vigor and ordinary intelligence the boy was capable, after the
 
 repose
 
 of the day, of doing his business on the surface of the ground for the night, though near the shaft, without any probable hazard of getting into it; and, in the same degree, the vigilance of the defendant over his safety might be relaxed, without exposing him to the imputation of negligence, much less, gross negligence. The truth is, the event could not have been reasonably apprehended, and was not likely to result from the service, nor had any natural connexion with it. No one could suppose, that the boy, knowing the place and its dangers, would incur the risk of stumbling into the shaft by not keeping wide awake. It was his misfortune to resemble the soldier Sleeping at his post, who pays the penalty by being sur. prised and put to death. The event is to be attributed to one of those mischances, to which all are more or less exposed, and not, in particular, to the want of care by the defendant.
 

 P»B CuittAM, Judgment affirmed,